UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA BAMBERGER WORKS, LLC dba BAM COMMUNICATIONS, et al., | Case No.: 26-CV-884 JLS (DDL) |
| Plaintiffs, | **ORDER REGARDING JUNE 25, 2026, HEARING** |
| v. | |
| LLORENTE & CUENCA USA, INC., et al., | |
| Defendants. | |

Presently before the Court is Plaintiffs Rebecca Bamberger Works, LLC's, d/b/a/ BAM Communications ("BAM"), Rebecca Bamberger's ("Bamberger"), RBW Holdco, Inc.'s ("RBW"), and BAM by BIG LCC's ("BIG") (collectively, "Plaintiffs") Noticed Motion for Temporary Restraining Order and Preliminary Injunction ("TRO," ECF No. 6). Also before the Court is Defendants Llorente & Cuenca USA, Inc.'s ("LLYC") and Llorente & Cuenca Madrid S.L.'s ("LLYC Madrid") (collectively, "Defendants") Response in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Opp'n," ECF No. 13) and Plaintiffs' Reply to Defendants' Opposition ("TRO Reply," ECF No. 21).

The Court has also received Defendants' Motion to Dismiss ("MTD," ECF No. 27-1), Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss ("MTD Opp'n,"

ECF No. 30), and Defendants' Reply in Support of Motion to Dismiss ("MTD Reply," ECF No. 32). Also before the Court is Defendants' Motion to Enforce Settlement Agreement ("Settlement Mot.," ECF No. 29-1), Plaintiffs' Response in Opposition to Motion to Enforce Settlement Agreement ("Opp'n Settlement Mot.," ECF No. 31), and Defendants' Reply in Support of Motion to Enforce Settlement Agreement ("Reply Settlement Mot.," ECF No. 33).

The Court has a hearing scheduled in this matter on June 25, 2026, at 1:30 P.M. At this hearing, the Court will discuss setting an evidentiary hearing on the Motion to Enforce Settlement Agreement for the reasons that follow.

## BACKGROUND[1]

In 2023, LLYC purchased a majority interest in BAM from RBW and its owner Bamberger. Settlement Mot. at 6.[2] LLYC alleged that the business operation of BAM "was hampered by Bamberger's obstructive and fraudulent actions, including the Bamberger Plaintiffs' misappropriation of BAM's operations, assets, clients, and employees to start up BIG." *Id.* Specifically, LLYC contended that Bamberger created BIG to fraudulently absorb all of BAM's assets, clients, and operations by, among other things, copying BAM's Google Drive. *Id.* at 7. LLYC originally sued the Bamberger Plaintiffs in *Rebecca Bamberger Works LLC d/b/a/ BAM Communications, et al. v. Rebecca Bamberger, et al.*, No. 24-CV-706 JLS (DDL)[3] (the "Consolidated Case").[4] *Id.* In December of 2024, the Consolidated Case settled pursuant to the terms of a settlement agreement (the "Settlement Agreement" or the "Agreement," ECF No. 29-2, Ex. A).[5]

---

[1] Given the procedural complexity of this case, the Court references the summary provided by Defendants in their Settlement Motion. *See generally* Settlement Mot.

[2] The page numbers refer to the electronically generated page numbers provided by CM/ECF.

[3] The Court takes judicial notice of all records filed in the Consolidated Case. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of matters of public record." (cleaned up)).

[4] On April 30, 2026, the Court consolidated the present matter with the Consolidated Case and ordered all future filing to be done in the present matter. *See* ECF No. 26.

[5] The Court incorporates by reference the Settlement Agreement as it is referred to extensively throughout Plaintiffs' Complaint. *See generally* Compl.; *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

26-CV-884 JLS (DDL)

Pursuant to the terms of the Settlement Agreement, the Bamberger Plaintiffs agreed to pay Defendants $9,000,000 over a period of six years. *Id.* at 8 (citing Settlement Agreement at § 3). In exchange, Defendants agreed to sell their majority ownership of BAM back to Plaintiffs. *Id.* Plaintiffs were required to make a down payment of $2,500,000 at signing ("Down Payment") and pay the remaining $6,500,000, plus interest, over the following six years ("Outstanding Balance"). *Id.* (citing ECF No. 29-2, Ex. 1 ("Loe Decl.") ¶ 5). Plaintiffs had to make quarterly interest payments on the Outstanding Balance starting in March 2025 ("Interest Payments") and quarterly interest payments starting in June 2025 ("Installment Payments"). *Id.* Plaintiffs were also required to provide copies of the financial statements of RBW, BIG, BAM, Bad Ideas Group Management, LLC, BIG Management Fund I GP, LLC, BIG Ideas Group Fund I, LP, OnePitch, LLC, and R Bamberger Properties, LLC (collectively, the "Grantor Entities"), on a monthly, quarterly, and annual basis (the "Financial Statements"). *Id.* The Outstanding Balance was secured by liens on certain assets and real property. *Id.*

Defendants allege that the Bamberger Plaintiffs "almost immediately" breached the Settlement Agreement by failing to make the first Interest Payment due on March 31, 2025, continued to breach by failing to make any Interest or Installment payments throughout 2025, and further breached by failing to provide monthly copies of the Financial Statements. *Id.* (citing Loe Decl. ¶¶ 6–12). Defendants sent Plaintiffs "multiple notices of default" and provided them opportunities to cure. *Id.* Plaintiffs did not respond to these notices. *Id.* In August 2025, Defendants were contacted by Victoria Bamberger, Bamberger's mother, and informed "that the Security and related Certification of Bamberger Family Trust ('Certification')," executed as part of the Settlement Agreement, contained forged signatures of Larry J. Bamberger, Bamberger's father, and Victoria Bamberger. *Id.* Victoria Bamberger claimed that the Bamberger Trust never authorized a lien against the trust property for Plaintiffs' obligations under the Settlement Agreement. *Id.* at 8–9. On August 20, 2025, Defendants issued Plaintiffs another notice of default to provide a "proper Security in the trust real property." *Id.* at 9. Plaintiffs did not respond.

3

*Id.* On October 15, 2025, Bamberger's parents, as trustees, sued LLYC in state court, alleging forgery and falsification of documents. *Id.* (citing Loe Decl. ¶ 17).

On December 8, 2025, Defendants moved for entry of a consent judgment in the Consolidated Case pursuant to the terms of the Settlement Agreement. *Id.*; *see also* Consolidated Case, ECF No. 135. The Court ordered Defendants to refile the motion for entry of consent judgment in the present action as a motion to enforce settlement agreement due to Plaintiffs' contestation as to whether their breach was excused. *See* ECF No. 26 ("Consolidation Order").[6]

On February 11, 2026, Plaintiffs filed their Complaint ("Compl.," ECF No. 1) bringing claims for breach of contract, breach of the implied covenant of good faith and fair dealing, wrongful foreclosure, quiet title, and declaratory relief. *See generally* Compl. Plaintiffs allege that Defendants failed to return BAM's business assets provided to Defendants in the original sale.[7] *Id.* ¶ 15. Specifically, Defendants failed to return "[a]n electronic link to a Google Drive holding more than ten years of customer lists and contact information, work product, trade secrets, communications, notes, and other documents and files" and "[a]dministrative access to [BAM's] website domains and email addresses" (the "Business Assets"). *Id.* Plaintiffs allege that without this access— "which w[as] transferred to Defendants and deleted by Plaintiffs pursuant to the terms of the [initial sale]"—Plaintiffs have been unable to conduct their business, resulting in a "multi-million-dollar loss for 2025, and continuing." *Id.* Plaintiffs argue that the failure to return the

---

[6] While the Settlement Agreement provided for entry of consent judgment in case of a breach, the Court found it improper to grant a contested "Joint Motion" for consent judgment. *See generally* Consolidation Order. Thus, the Court concluded the proper vehicle for the relief requested is the current Settlement Motion providing Plaintiffs an opportunity to respond. *Id.*

[7] Defendants indicate that LLYC "voluntarily provided Plaintiffs access to all information LLYC migrated when it formally owned BAM." Settlement Mot. at 9 n.4 (first citing ECF No. 29-5 ("Nuñez Decl.") ¶ 3; then citing ECF No. 29-3 ("Casillas Decl.") ¶ 4). Defendants report that this information consisted of "52 user email mailboxes, totaling 356.5 GBs of data," and was accessed by Plaintiffs' counsel several times. *Id.* Defendants continue to deny any contractual obligations to provide the Business Assets in connection with the Settlement Agreement. *Id.*

26-CV-884 JLS (DDL)

Business Assets was a material breach excusing Plaintiffs from further performance of the Settlement Agreement, including all payments. *Id.* ¶ 16.

On March 2, 2026, Plaintiffs filed their Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 6) to enjoin Defendants' foreclosure of the security assets and real property. TRO at 2. On March 3, 2026, the Court issued an Administrative Stay to "properly evaluate the merits of Plaintiffs' Motion" given the "extensive procedural history" of the case and the Court's schedule. ECF No. 7. Following the Court's Consolidation Order on April 30, 2026, Defendants filed their Motion to Dismiss (ECF No. 27) and their Motion to Enforce Settlement Agreement (ECF No. 29) on May 4, 2026, and May 14, 2026, respectively.

## DISCUSSION

### I.    Jurisdiction

"Federal courts 'have no inherent power to enforce settlement agreements entered into by parties litigating before them.'" *K.C. v. Torlakson*, 762 F.3d 963, 967 (9th Cir. 2014) (quoting *Arata v. Nu Skin Int'l, Inc.*, 96 F.3d 1265, 1268 (9th Cir. 1996)); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378–79 (1994). "However, if the district court explicitly retains jurisdiction over the settlement agreement . . . then 'a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.'" *Arata*, 96 F.3d at 1268–69 (quoting *Kokkonen*, 511 U.S. at 381). Here, the Court expressly retained jurisdiction over enforcement of the Settlement Agreement in the Consolidated Case. *See* Consolidated Case, ECF No. 120 at 1 ("As stipulated by the Parties, the Court will retain jurisdiction over enforcement of the settlement agreement."). Therefore, the Court has jurisdiction to enforce the Settlement Agreement.

### II.    Evidentiary Hearing

District courts "may enforce only *complete* settlement agreements." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (citations omitted); *see also Doi v. Halekulani Corp.*, 276 F.3d 1131, 1138 (9th Cir. 2002) ("*Callie*, of course, stands for the unremarkable

proposition that 'the district court may enforce only *complete* settlement agreements. . . .'" (citation omitted)). To be enforced, a settlement agreement must meet two requirements. First, the agreement must be complete, meaning "that the parties have reached agreement on all material terms." *WMBE Payrolling, Inc. v. Celularity, Inc.*, No. 24-CV-586-W-JLB, 2025 WL 1870987, at *2 (S.D. Cal. June 3, 2025) (citing *Callie*, 829 F.2d at 890–91). Second, the parties "must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute." *Id.* (quoting *Marks-Forman v. Reporter Pub. Co.*, 12 F. Supp. 2d 1089, 1092 (S.D. Cal. 1998)).

"Where material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Callie*, 829 F.2d at 890 (citations omitted); *see also Tiger Bay Village Corp. v. Yihe Corp.*, No. 13-8837-RSWL-FFM(x), 2014 WL 3662259, at *2 (C.D. Cal. July 18, 2014) ("A district court retaining jurisdiction to enforce a settlement agreement has the power to summarily enforce the agreement if the parties do not dispute the contract's material terms or its binding nature on the parties." (citing *Callie*, 829 F.2d at 890)).

Here, Plaintiffs argue that the mutual intention behind the Settlement Agreement was to transfer BAM back to Plaintiffs to continue operations and generate revenue to pay the Installment and Interest Payments. Settlement Mot. Opp'n at 8. Plaintiffs contend that the Business Assets were transferred to Defendants in the underlying sale at issue in the Consolidated Case, therefore, "they were unequivocally contemplated and expected by the [P]arties to be transferred back to Plaintiff[s] in the Repurchase." *Id.* Plaintiffs thus argue that the requirement for Defendants to transfer back the Business Assets is an implied, material contractual term because their return was "necessary for Plaintiff[s] to run [BAM]," "central to the bargained-for exchange Repurchase between Plaintiff[s] and Defendant[s]," and "so obvious it did not need to be detailed by line item." *Id.* at 12. Plaintiffs thus conclude that Defendants' failure to return the Business Assets was a material breach excusing their performance under the Settlement Agreement. *Id.* at 10.

26-CV-884 JLS (DDL)

Therefore, because the material terms of the Settlement Agreement are disputed, the Court finds that an evidentiary hearing is necessary to resolve the Motion.

At the June 25, 2026, hearing the Court **ORDERS** the Parties to be prepared to discuss:

1. A date for the evidentiary hearing on the Motion to Enforce Settlement Agreement.

2. How much time will be necessary for each side to present their evidence.

3. When the Parties can submit witness lists and pre-hearing briefing detailing the implied material terms in dispute and associated legal issues.

4. Any other scheduling matters related to an evidentiary hearing.

**IT IS SO ORDERED.**

Dated:  June 18, 2026

Hon. Janis L. Sammartino
United States District Judge

26-CV-884 JLS (DDL)