UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA BAMBERGER WORKS, LLC dba BAM COMMUNICATIONS, et al.,<br>Plaintiffs,<br>v.<br>LLORENTE & CUENCA USA, INC., et al.,<br>Defendants. | Case No.: 26-CV-884 JLS (DDL)<br><br>**ORDER (1) GRANTING DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT, (2) GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT, (3) DENYING AS MOOT PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER, (4) LIFTING ADMINISTRATIVE STAY, AND (5) DENYING PLAINTIFFS' EX PARTE APPLICATION FOR STAY ON JUDGMENT AND COLLECTIONS ENFORCEMENT**<br><br>**(ECF Nos. 6, 7, 27, 29, 41)** |

Presently before the Court are Defendants' (collectively, "LLYC") Motion to Enforce Settlement Agreement ("MTE," ECF No. 29) and Motion to Dismiss (ECF No. 27). Also before the Court are Plaintiffs' (collectively, "BAM") Motion for Temporary Restraining Order ("TRO," ECF No. 6) and Ex Parte Application for Stay on Judgment and Collections Enforcement (ECF No. 41). Having carefully considered the law and the

arguments of the Parties, the Court **GRANTS** LLYC's Motions and **DENIES** Plaintiffs Motion and Application.

**BACKGROUND**

The original dispute before the Court arose out of a 2023 sale of a public relations and marketing firm (the "Company") to LLYC. ECF No. 1 ("Compl.") ¶ 13. That matter, *Rebecca Bamberger Works, LLC, et al. v. Bamberger, et al.*, 24-CV-706-JLS-DDL (the "Related Matter"), settled on December 31, 2024. *Id.* Pursuant to the terms of the Settlement Agreement and Mutual General Release ("SAMGR," MTE, Ex. A) and Membership Interest Purchase and Settlement Agreement ("MIPSA," ECF No. 31-1) (collectively, "Settlement Agreement"), RBW Holdco, Inc. was to repurchase the Company from LLYC for $9,000,000 and return all Company assets in exchange for dismissing the suit with prejudice. Compl. ¶ 14. BAM made a $2,500,000 down payment towards that amount, but alleged that LLYC failed to return the Company's business assets which were provided in the original sale, including (1) an electronic link to a Google Drive holding ten years of customer lists, contact information, work product, trade secrets, notes, and other documents; and (2) administrative access to the Company's website domains and email addresses (the "Business Assets"). *Id.* ¶ 15. BAM alleges that without these, it has been unsuccessful in conducting its business, leading to a multi-million-dollar loss for 2025. *Id.* BAM further argues that LLYC's failure breached the implied covenant of good faith and fair dealing and materially breached the Settlement Agreement, thus excusing BAM from further performance under the Agreement. *Id.* ¶¶ 21–25.

On December 8, 2025, LLYC "recorded a Notice of Default and Election to Sell Under Deed of Trust (DOC# 2025-0345506), related to Plaintiffs' Property that was security for the Repurchase." *Id.* ¶ 27. BAM filed its TRO Motion to prevent this foreclosure sale. *See generally* TRO. In lieu of ruling on BAM's TRO, the Court issued an administrative stay barring LLYC from proceeding with the nonjudicial foreclosure of BAM's properties. ECF No. 7. LLYC subsequently filed its Motion to Dismiss and Motion to Enforce Settlement Agreement. ECF Nos. 27, 29. After holding a hearing on

these motions, the Court requested supplemental briefing on (1) whether there can be an implied term in an integrated settlement agreement, and (2) whether an evidentiary hearing is necessary to resolve a dispute about the Settlement Agreement's terms. ECF No. 36. BAM then filed its Ex Parte Application asking the Court to issue a stay in the event that LLYC's Motion to Enforce is granted. ECF No. 41.

## DISCUSSION

LLYC argues that, because the Settlement Agreement was executed by both Parties and is completely integrated, it is enforceable. MTE at 8–9. As BAM has stopped making payments on the $6.5 million still owed under the Settlement Agreement, LLYC contends that BAM has breached the Agreement. *Id.* at 9. BAM counters that LLYC breached the Settlement Agreement by failing to return the Business Assets. ECF No. 30 ("Opp'n") at 5. Because this breach was material, BAM argues that it is excused from making the remaining payments. *Id.*

There is no question that BAM has failed to make payments on the balance of the amount owed under the Agreement. *See generally* MTE; Opp'n. The only question is whether BAM is excused from performance as a result of LLYC's alleged breach. The Court sides with LLYC.

As discussed above, two items make up the Business Assets: (1) a Google Drive and (2) access to the Company website. It is undisputed that LLYC had an express duty to return access to the company website. *See generally* MTE; Opp'n; *see also* MIPSA Section 2.2 ("[LLYC] shall deliver . . . to [BAM]. . . (b) all documentation and instruments reasonably necessary to ensure that the Company has full ownership and control of the Website"). It is also undisputed that LLYC had *no* express obligation to turn over the Google Drive to BAM. *See generally* MTE; Opp'n. Rather, BAM contends that this duty was implied under the Settlement Agreement. Opp'n at 8. LLYC challenged this position, *see generally* ECF No. 33 ("Reply"), and as a result, the Court ordered supplemental briefing on whether an evidentiary hearing is required. The Court finds that it is not.

/ / /

## I. No Evidentiary Hearing is Necessary Because the Terms of the Settlement Agreement Cannot be Disputed

"Where material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). No evidentiary hearing is required, however, where the enforceability of the contract turns upon objective factors and no party disputes the evidence presented. *Trs. of the Operating Eng'rs Pension Tr. v. Smith-Emery Co.*, No. 209CV01476CASAJWX, 2017 WL 275599, at *8 (C.D. Cal. Jan. 19) (citing *Calcor Space Facility, Inc. v. McDonnell Douglas Corp.*, 5 F. App'x 787, 789 (9th Cir. 2001)).

As a threshold matter, both parties agree that no evidentiary hearing is necessary.[1] *See* ECF No. 37 ("Def. Supp. Br."); ECF No 38 ("Pl. Supp. Br."); *see also Schrader v. Wynn Las Vegas, LLC*, No. 2:19-cv-02159-JCM-BNW, 2020 WL 8513790, at *2 (D. Nev. Dec. 9, 2020) ("The Court cannot manufacture arguments for litigants; arguments that are not developed are waived.") (citing *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)). Despite this apparent consensus, BAM insists that the Court should imply a term into the Settlement Agreement: that LLYC was required to return the Google Drive to BAM. Pl. Supp. Br. at 5–12. BAM makes three arguments in support of this position—all three are without merit.

### *A. The Agreement is Completely Integrated*

BAM first argues that, because the Settlement Agreement is an incomplete integration, "the circumstances justify" implying the Google Drive term. *Id.* at 5–6. This is incorrect.[2]

---

[1] The Parties dispute whether one of the Business Assets (the Company's website) was returned. *See* MTE; Opp'n. But this disagreement does not affect the completeness or enforceability of the Settlement Agreement. It only concerns whether the Parties performed under the Settlement Agreement.

[2] Although the Settlement Agreement is made up of two separate documents, LLYC argues that multiple documents can constitute a fully integrated agreement under California law. Def. Supp. Br. at 6 (citing *Cariaga v. Loc. No. 1184 Laborers Int'l Union of N. Am.*, 154 F.3d 1072, 1074 (9th Cir. 1998)). BAM does not challenge this assertion, *see generally* Pl. Supp. Br., and the Court finds no reason to hold otherwise.

The question of whether an agreement is integrated is one of law and is thus decided by the Court. *Alling v. Universal Mfg. Corp.*, 5 Cal. App. 4th 1412, 1434 (1992). "When the parties to an agreement incorporate the complete and final terms of the agreement in a writing, such an integration in fact becomes the complete and final contract between the parties." *Hayter Trucking, Inc. v. Shell W. E&P, Inc.*, 18 Cal. App. 4th 1, 14 (1993). And when an agreement is fully integrated, courts ordinarily will not imply terms into it. *Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222, 1230 (C.D. Cal. 2007) (citing *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859 (9th Cir. 1995)). Here, the Settlement Agreement is unmistakably a complete integration. The Agreement states that it "is intended by the Parties as the final and complete expression of their agreement and understanding with respect to its subject matter." SAMGR ¶ 20; *see also* MIPSA Section 7.6 ("This Agreement (including the schedules and exhibits hereto) and the other Transaction Agreements represent the entire understanding and agreement between the Parties."). The Agreement further articulates that it "constitutes the complete agreement between the Parties and supersedes all prior or contemporaneous agreements or representations, written or oral, concerning the subject matter of this Agreement." SAMGR ¶ 20. Because the Settlement Agreement is fully integrated, the Court "must not add a term to a contract about which the agreement is silent." *Arriagarazo v. BMW of N. Am., LLC*, 64 Cal. App. 5th 742, 748 (2021)

BAM maintains that the Settlement Agreement was not intended to be a complete integration because it is "silent on the subject matter of the implied terms." Pl. Supp. Br. at 6. But this reasoning is entirely circular—an implied term is by definition silent. If BAM had its way, a party could wiggle its way out of any completely integrated agreement by conjuring up some "implied term" that was absent from the agreement. When an agreement is fully integrated, a court "does not have the power to . . . insert in the contract language which one of the parties now wishes were there." *Levi Strauss & Co. v. Aetna Cas. & Sur. Co.*, 184 Cal. App. 3d 1479, 1487 (1986).

/ / /

BAM then cites *Sicor* for the proposition that the existence of an integration clause is "but one factor in the integration analysis." Pl. Supp. Br. at 5 (citing *Sicor*, 51 F.3d at 859). But *Sicor* is inapposite. There, the parties had an oral agreement that was contemporaneous to their written agreement. *Sicor*, 51 F.3d at 858. The court explained that typically, an integrated written contract precludes consideration of additional terms. *Id.* at 859. But under California law, such consideration is not barred when the written agreement is "'either incomplete or silent on the subject, and the circumstances justify an inference that it was not intended to constitute a final inclusive statement of the transaction.'" *Id.* (citing *Ellis v. Klaff*, 96 Cal. App. 2d 471, 476 (1950)). In this situation, courts should analyze three factors in determining whether to consider the oral agreement: (1) the completeness of the written contract, (2) the terms of the oral agreement and whether they contradict the writing, and (3) whether the oral agreement can naturally be made as a separate agreement. *Id.* (citing *McLain v. Great Am. Ins. Cos.*, 208 Cal. App. 3d 1476, 1484 (1989)).

Here, however, neither party alleges that there was a contemporaneous oral agreement, so the three-factor test proffered by *Sicor* and *McLain* is inapplicable. And there is every indication that the Settlement Agreement *was* "intended to constitute a final inclusive statement" of the contract. *Sicor*, 51 F.3d at 858. BAM's conclusory statement that the "circumstances justify" the opposite inference is insufficient to overcome this finding. Pl. Supp. Br. at 6.

### ***B. The Implied Covenant of Good Faith and Fair Dealing is Inapplicable***

BAM next argues that the implied covenant of good faith and fair dealing supplied LLYC with a duty to return the Google Drive. Opp'n at 6. This argument has no place here.

The covenant of good faith and fair dealing is "implied by law in every contract." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000). The covenant prevents a party from "unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." *Id.* As a result, it "cannot impose substantive duties or limits on the contracting

parties beyond those incorporated in the specific terms of their agreement." *Id.* Put differently, the covenant "is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract." *Racine & Laramie, Ltd. v. Dep't. of Parks & Recreation*, 11 Cal. App. 4th 1026, 1032 (1992).

Here, BAM claims that LLYC's failure to turn over the Google Drive "prevented Plaintiffs from receiving the benefits of the agreements." Pl. Supp. Br. at 8. But the Settlement Agreement imposed no duty on LLYC to do so. So BAM is trying to manufacture an "obligation[] not contemplated in the contract." *Racine & Laramie*, 11 Cal. App. 4th at 1032. BAM's reliance on *In re Sony* is thus misplaced. Pl. Supp. Br. at 7 (citing *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942 (S.D Cal. 2014)). There, the parties entered into a settlement agreement that required them to negotiate attorneys' fees. *Id.* at 1012. The court denied a motion to dismiss a breach of the implied covenant claim where the plaintiff alleged that the defendant failed to negotiate in good faith. *Id.* Contrary to the situation this case, the implied covenant claim there could be directly tied to an express duty under the agreement: the duty to negotiate.

### *C. Parol Evidence is Improper*

BAM's final effort to imply the Google Drive term into the Settlement Agreement comes in the form of parol evidence. BAM argues that extrinsic evidence can be used to supplement the Settlement Agreement because its terms are ambiguous. Pl. Supp. Br. at 9. Specifically, BAM contends that the Parties' course of dealing and performance show that LLYC had a duty to hand over the Google Drive. *Id.* at 10. This effort comes up short.

The parol evidence rule "generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the terms of an integrated written instrument." *Alling v. Universal Mfg. Corp.* 5 Cal. App. 4th 1412, 1433 (1992). Under California law, analysis of the rule's application proceeds in two parts: (1) whether the agreement is a complete integration, and (2) whether the agreement is "susceptible of the

meaning contended for by the party offering the evidence." *Gerdlund v. Elec. Dispensers Int'l,* 190 Cal. App. 3d 263, 270 (1987) (citing *Masterson v. Sine,* 68 Cal. 2d 222 (1968)). If an agreement is completely integrated, "parol evidence of terms not specifically included in the written contract is not admissible." *Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 277 (9th Cir. 1992). But California provides an exception to this rule when explaining the meaning of an express term. *Id.*

Here, as explained above, the Settlement Agreement is certainly a complete integration. And because mention of the Google Drive is nowhere to be found in the Settlement Agreement, BAM is trying to introduce evidence of a term "not specifically included" in that Agreement. *Brinderson-Newberg Joint Venture*, 971 F.2d at 277. Sensing this problem, BAM attempts to utilize the exception to the parol evidence rule, arguing that the Settlement Agreement is ambiguous. Pl. Supp. Br. at 9. This argument amounts to a single sentence in BAM's brief: "The Settlement Agreement's express terms are ambiguous or incomplete on the subject at issue, permitting the Court to consider extrinsic evidence to interpret the Settlement Agreement's meaning." *Id.* This bald assertion fails to point to what part of the Settlement Agreement is ambiguous and offers no explanation for why it is ambiguous.

BAM's course-of-dealing argument fares no better. It too fails to identify an express term that needs an explanation. *See id.* at 10–12. Although BAM highlights that the Google Drive was transferred to LLYC in the underlying sale, adding this term to the Settlement Agreement would construct a *new* term, not explain an *existing* one.

In light of the forgoing, the Court finds that LLYC had no duty to turn over the Google Drive to BAM. As a result, BAM cannot base any of the claims in its Complaint on LLYC's failure to do so. Nor can it excuse its failure to perform under the Settlement Agreement on these grounds.

## II. The Settlement Agreement is Enforceable

A district court has the inherent power to enforce a settlement agreement entered into while the litigation is pending before it. *In re City of Equities Anaheim, Ltd.*, 22 F.3d

954, 957 (9th Cir. 1994). To be enforced, a settlement agreement must meet two requirements: (1) the agreement must be complete and (2) both parties must have agreed to its terms. *Bryant v. Amtrak*, No. 08CV458-WQH-RBB, 2011 WL 291233, at *3 (S.D. Cal. Jan. 26, 2011) (first citing *Maynard v. City of San Jose,* 37 F.3d 1396, 1401 (9th Cir.1994), then citing *Harrop v. W. Airlines, Inc.,* 550 F.2d 1143, 1144–45 (9th Cir.1977)). The construction and enforcement of settlement agreements are generally governed by applicable state contract law. *United Com. Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992). In this case, the Parties do not dispute that California law applies. *See generally* MTE; Opp'n; Reply.

Under California law, the primary goal of contract interpretation is to give effect to the mutual intention of the parties. *See Bank of the W. v. Super. Ct.*, 2 Cal. 4th 1254, 1264 (1992). "[T]he mutual intention of the contracting parties at the time the contract was formed governs. [Courts] ascertain that intention solely from the written contract if possible, but also consider the circumstances under which the contract was made and the matter to which it relates." *Emps. Reinsurance Co. v. Super. Ct.*, 161 Cal. App. 4th 906, 919 (2008). "[The court] consider[s] the contract as a whole and interpret[s] the language in context, rather than interpret[ing] a provision in isolation." *Id.*

Here, there appears to be no dispute as to whether the two requirements of enforceability are met. *See generally* MTE; Opp'n. And because BAM has clearly breached its duties under the Settlement Agreement, the only argument left standing is that LLYC materially breached the Agreement by failing to deliver the second Business Asset—access to the Company website[3]—thus excusing BAM's performance. The Court finds no excuse here.

/ / /

---

[3] The MIPSA mentions only one website. *See* MIPSA Section 8.1 ("'Website' means the website located at www.bamtheagency.com . . . ." However, BAM now argues in its Supplemental Brief that LLYC was also required to turn over the website located at www.bamcommunications.biz. Pl. Supp. Br. at 2.

At issue is MIPSA Section 2.2, which states that "[LLYC] shall deliver . . . to [BAM] . . . (b) all documentation and instruments reasonably necessary to ensure that the Company has full ownership and control of the Website." BAM claims that LLYC did not uphold this duty because BAM has not been able to log in to the administrative portal for the website. *See* Opp'n, Declaration of Rebecca Bamberger ("[W]hen I attempt to log in to the administrative portal for the Domains, it states I am not allowed."). But this does not show that LLYC failed to turn over the website. Indeed, LLYC's exhibits tell a different story. *See* Reply Ex. 1 (Declaration of Sandra Ramirea Loe) ("LLYC . . . confirmed with prior counsel for [BAM] . . . that control of BAM's website domain had been transferred to [BAM]."); *id.* ("[U]pon looking up BAM's website domain <http://bamtheagency.com> I discovered that the URL is now automatically redirected to the website <https://bambybig.agency>, the new operating business through Defendant BAM by BIG LLC."); *id.* ("BAM's website is active and shows the company held events through 2025 and has event plans throughout 2026."); *see also* The Related Matter, ECF No. 139-2 (screenshots of <https://bambybig.agency> from February 13, 2026, showing that the website is up and running).

Although it appears that control over the website has been delivered to BAM, the Court needs not make that finding here. Even if LLYC failed to hand over the website, BAM's argument would still fail because BAM neglects to explain why this breach is material. A material breach discharges the other party from its duty to perform. *Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (2011). "Whether a partial breach of a contract is material depends on the importance or seriousness thereof and the probability of the injured party getting substantial performance." *Id.* at 278 (citation omitted). But BAM merely states that the return was material to the Settlement Agreement "considering its "importance or seriousness.'" Opp'n at 7 (quoting *Brown*, 192 Cal. App. 4th at 277–278). This threadbare allegation is inadequate to establish materiality.

/ / /

/ / /

## III. The Court Enters Consent Judgment

Under the Settlement Agreement, the Parties agreed that the Court would enter Consent Judgment upon BAM's breach of the Agreement. *See* SAMGR ¶ 13(a); Attachment A. Under this Judgment, LLYC is entitled to $10,600,000 plus interest, less any principal paid as of the time of the breach, along with attorneys' fees, expenses, and costs incurred in enforcing the Settlement Agreement. *Id.* As discussed above, BAM clearly breached the Settlement Agreement. And because that breach is not excused, the Court has the power to enter consent judgment.

"A consent decree is 'essentially a settlement agreement subject to continued judicial policing.'" *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990) (quoting *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983)). "It is not a decision on the merits or the achievement of the optimal outcome for all parties, but is the product of negotiation and compromise." *Oregon*, 913 F.2d at 580. "Before approving a consent decree, a district court must be satisfied that it is at least fundamentally fair, adequate and reasonable." *Id.* "In applying the 'fair, adequate and reasonable' standard, courts examine both procedural and substantive fairness." *United States v. Pac. Gas & Elec.*, 776 F. Supp. 2d 1007, 1024–25 (N.D. Cal. 2011) (citing *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 86 (1st Cir. 1990)). "In addition, because it is a form of judgment, a consent decree must conform to applicable laws." *Oregon*, 913 F.2d at 580. When reviewing a consent decree, a court must independently review its terms and avoid "rubber stamp approval." *See United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 747 (9th Cir. 1995). The approval of a proposed consent decree rests within the sound discretion of the court. *See Oregon*, 913 F.2d at 580.

### *A. Procedural Fairness*

The Court first considers whether the proposed Consent Judgment is the "product of a procedurally fair process." *Montrose Chemical*, 50 F.3d at 746. "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." *Cannons*, 899 F.2d at 86; *San Diego Unified*

*Port Dist. v. Gen. Dynamics Corp.*, No. 07-CV-01955-BAS-WVG, 2017 WL 2655285, at *7 (S.D. Cal. June 20, 2017). "The district court's role in reviewing the essentially private agreement among the parties is 'limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties.'" *Oregon*, 913 F.2d at 586 (quoting *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

Here, there is nothing in the record to suggest that the Consent Judgment resulted from anything other than "good faith, arms-length negotiations." *Oregon*, 913 F.2d at 581. The Judgment is the result of extensive negotiations conducted by experienced counsel. *See Ecological Rts. Found. v. San Diego Gas & Elec. Co.*, No. 24-CV-1614-RSH-MMP, 2024 WL 4495530, at *3 (S.D. Cal. Oct. 15, 2024).

***B. Subtantive Fairness and Reasonableness***

Next, the Court considers whether the proposed Consent Judgment is "substantively fair to the parties in light of a reasonable reading of the facts." *Montrose Chemical*, 50 F.3d at 746. "Substantive fairness introduces into the equation concepts of corrective justice and accountability: a party should bear the cost of the harm for which it is legally responsible." *Cannons*, 899 F.2d at 87. The relevant standard is not whether the settlement "is one which the court itself might have fashioned, or considers as ideal[.]" *Id.* at 84. "Rather, the court's approval is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice." *Oregon*, 913 F.2d at 581 (quoting *Officers for Just.*, 688 F.2d at 625).

Once again, there is nothing that indicates the Consent Judgment is unfair or unreasonable. The original sale of the Company was for just under $10.6 million, demonstrating that the $10.6 million judgment entered here is reasonable. *See* SAMGR, Recitals. And given the time and expense LLYC was forced to incur in enforcing the Settlement Agreement, the Court finds the attorneys' fees and costs provision fair.

/ / /

/ / /

The Court therefore finds that entering consent judgment is proper. LLYC, however, has not filed a declaration in support of its request for attorneys' fees and costs. Thus, LLYC **SHALL FILE** a declaration in support of this request.

**IV. BAM's Application for Stay is Denied**

BAM, "in the abundance of caution," applies for entry of a 30-day stay on judgment and collections enforcement in the event that the Court rules against it. ECF No. 41. However, BAM fails to adequately explain why filing a notice of appeal, which automatically stays the judgment, is insufficient. Nor does BAM adequately explain why the Application was appropriately filed ex parte. *See Firearms Pol'y Coal., Inc. v. City of San Diego*, No. 23CV400-LL-VET, 2024 WL 5339374, at *1 (S.D. Cal. Feb. 8, 2024) (denying ex parte application because applicant failed to show that the use of an ex parte procedure was justified). Accordingly, BAM's Application is denied.

**CONCLUSION**

LLYC's Motion to Enforce Settlement (ECF No. 29) is **GRANTED**. The Proposed Consent Judgment attached to this Order as Attachment A is **ENTERED**. LLYC **SHALL FILE** a declaration in support of its request for attorneys' fees and costs <u>on or before October 20, 2026</u>. BAM may respond to this declaration <u>on or before November 3, 2026</u>. Because BAM's Complaint is based on issues identical to those addressed in the Motion to Enforce, the Complaint cannot survive. Thus, LLYC's Motion to Dismiss (ECF No. 27) is **GRANTED**, BAM's Motion for Temporary Restraining Order (ECF No. 6) is **DENIED AS MOOT**, and the Administrative Stay (ECF No. 7) is **LIFTED**. BAM's Application for Stay (ECF No. 41) is also **DENIED**. As this concludes the litigation in this matter, the Clerk **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: October 8, 2026

Janis L. Sammartino

Hon. Janis L. Sammartino
United States District Judge